CITY OF COLUMBUS, MUNICIPAL CIVIL SERVICE COMMISSION AND DIVISION OF POLICE, APPELLEE, *v.* OHIO CIVIL RIGHTS COMMISSION, APPELLANT; JANSON ET AL., APPELLEES.

(No. 84AP-192 — Decided September 24, 1985.)

*Gregory S. Lashutka,* city attorney, and *Donald R. Keller,* for city of Columbus, Municipal Civil Service Commission and Division of Police.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Helen M. Ninos,* for Ohio Civil Rights Commission.

*Phyllis Janson, Adrian Duane Powell* and *Jodi Johnson Gurstenberger, pro se.*

MOYER, J. This matter is before us on the appeal of the Ohio Civil Rights Commission ("commission") from a judgment of the Court of Common Pleas of Franklin County finding an order of the commission was not supported by reliable, probative or substantial evidence, and also that, as a matter of law, the city's minimum uncorrected visual acuity standard for employment of police officers was lawful.

Appellee Janson and two other individuals, all of whom had applied for positions as police officers with the city, had been informed that their names had been removed from the police eligibility list due to their failure to meet the visual acuity requirements established by the city for the employment of police officers. These three individuals subsequently filed charges before the commission, alleging that the city had unlawfully rejected them for employment because of their poor vision, and that their visual limitations constituted a handicap. The commission, in an order dated May 17, 1983, found that the city had committed unlawful handicap discrimination in violation of R.C. 4112.02(A), and ordered specific remedial action be taken. The city then filed a petition for review of the commission's order with the Franklin County Court of Common Pleas, which determined that the decision of the commission was not supported by reliable, probative, or substantial evidence; that the visual acuity standard used by the city was lawful under the relevant sections of the Revised Code; and that the application of said standard did not result in wrongful discrimination against the claimants.

The visual acuity standard in question had been adopted subsequent to the investigation and recommendation of Dr. James Sheedy, who was retained by the Columbus Civil Service Commission to determine whether an uncorrected vision standard was necessary for the job of police officer and, if so, to recommend an appropriate standard. Dr. Sheedy's determination that an uncorrected vision standard was necessary was based in part upon evidence that Columbus police officers in the past have experienced damage to their eyeglasses and have had their glasses knocked off during physical confrontations with suspects. Dr. Sheedy further determined that, a standard of some type being necessary, the appropriate uncorrected vision standard was that of binocular 20/40 visual acuity. Testing indicated that this degree of visual acuity would permit acceptable visual identification of a human face at a distance of approximately twenty feet, while a lesser standard would make facial identification at that distance impossible. The particular standard and distance were chosen because Dr. Sheedy determined that the most critical task performed by a police officer was the use of a firearm, eighty percent of such firearm usage occurring at a distance of twenty feet or less. Furthermore, 20/40 visual acuity is that which is required to operate a motor vehicle in the state of Ohio.

Vision testing on these three police applicants determined their vision to be below the degree of visual acuity required by the city for new police officer applicants. Janson was the only applicant whose tests had widely disparate results. However, even the hearing examiner concluded that, by the most reliable diagnosis, Janson's vision was approximately 20/200, far below the acceptable standard. Furthermore, it was admitted by Janson that she had engaged in deception by "cheating" and wearing contact lenses during an "uncorrected" vision examination, in an attempt to foil the police applicant screening process.

The commission asserts the following assignments of error:

"1. The lower court erred in find-

ing the commission's order was not supported by reliable, probative, and substantial evidence.

"2. The lower court erred in finding claimants, Janson, Powell and Gurstenberger not qualified handicapped individuals under Ohio Revised Code 4112.01(A)(13).

"3. The lower court erred in finding the employment of claimants Janson, Powell and Gurstenberger as police officers would present an occupational hazard under Revised Code § 4112.02 (L).

"4. The lower court erred in finding the city's 20/40 uncorrected vision standard is a bona fide occupational qualification for the position of police officer.

"5. The court erred in finding the commission exceeded its authority granted in Ohio Revised Code 4112.05 (B) in ordering instatement and back pay for claimants Janson, Powell, and Gurstenberger."

The commission's first assignment of error concerns the standard of review applied by the trial court to the commission's order. R.C. 4112.06(E) provides that the findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence. Such a determination, "* * * essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court." *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65]. While giving deference to the administrative results before it, the common pleas court has a crucial function in considering and weighing the evidence at hand. Therefore, the role of the appellate court in reviewing the determination of the court of common pleas concerning the weight of evidence

in an appeal by an agency "* * * is limited to determining whether the court of common pleas abused its discretion. * * *" *Akers* v. *Montgomery Cty. Welfare Dept.* (Dec. 29, 1983), Franklin App. No. 83AP-561, unreported, at page 2.

The term "abuse of discretion" refers to more than a minor error in law or in judgment, implying instead that the attitude of the court in its decision was unreasonable, arbitrary or unconscionable. *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]; *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219. The trial court based its decision upon the lack of evidence to support the finding of the commission that the applicants were handicapped individuals, who could be subject to discrimination in violation of R.C. Chapter 4112.

The trial court applied the analysis found in *McDonnell Douglas Corp.* v. *Green* (1973), 411 U.S. 792, requiring the commission first to establish a prima facie case that an individual is handicapped within the meaning of the relevant statute and thus was discriminated against in violation of said statute. The *McDonnell Douglas* analysis places the initial burden upon the claimant to establish a prima facie case of discrimination by showing: (1) that the individual belongs to the appropriate minority; (2) that he or she applied and was qualified for a job for which the employer was seeking applicants; (3) that he or she was rejected despite possessing such qualifications; and (4) that subsequent to this rejection the employer continued to seek applications from persons of the individual's qualifications. *Id.* at 802.

This initial burden having been met by the claimant, the burden would then shift to the city to articulate a legitimate and nondiscriminatory reason for the rejection of the applicant. If it were shown that the rejection had been made on the basis of a handicap, the burden would

then be upon the city to show that the refusal to hire was based upon a bona fide occupational qualification or was made in light of the occupational hazard exception provided by R.C. 4112.02(L). At that point, the burden would then return to the commission to prove, by a preponderance of the evidence, that the city's reasons for rejection were merely a pretext for impermissible discrimination against the handicapped.

Upon the record before us and after a consideration of the relevant statutory definitions, it is apparent that the trial court did not act in an unreasonable, arbitrary or unconscionable manner in its review of the evidence presented to it. As the trial court did not abuse its discretion in finding that the commission's order was not supported by reliable, probative and substantial evidence as to the applicants' alleged handicap, and as to the motivations of the city in rejecting the applicants, the first assignment of error is not well-taken and is overruled.

The second assignment of error concerns the alleged status of these police applicants as handicapped persons under the terms of R.C. 4112.01(A)(13). This statute defines "handicap" as follows:

" 'Handicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped."

R.C. 4112.02(A) provides that it is an unlawful discriminatory practice:

"For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

The trial court correctly noted that the definition of handicap under the statute is critical in the matter before us, and properly found that the evidence presented did not demonstrate that the applicants could not perform "everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped." No objective standards were provided, either through facts or medical testimony, to enable the court to evaluate what "significantly increased hardship and vulnerability" would constitute for such individuals, especially in light of the contradictory visual acuity readings on certain of the individuals. Furthermore, at least one of the police applicants testified that she commonly performed her everyday routine living and working functions at home without use of contact lenses. Likewise, the other two applicants gave no testimony regarding significantly increased hardship and vulnerability that they had encountered in their day-to-day life. With such evidence before it, the trial court properly found that the commission failed to establish by reliable, probative and substantial evidence a prima facie case that the police applicants were handicapped, as that condition is defined by the Ohio statute.

The commission also urges the ap-

plication of an administrative definition of handicap contained in Ohio Adm. Code 4112-5-02(I), which reads as follows:

" 'Handicapped person' includes any person who presently has a handicap as defined by section 4112.01(M) [renumbered 4112.01(A)(13)] of the Revised Code or any person who has had a handicap as defined by section 4112.01(M) [renumbered 4112.01(A)(13)] of the Revised Code, who no longer has any functional limitation, but who is treated by a respondent as having such a handicap."

The police applicants in the matter before us also failed to meet this administrative definition of handicapped, as the administrative definition refers to an individual who has had a handicap as defined by the statute but who no longer has any such functional limitation. There is no evidence to indicate that these police applicants at any time in their lives have had a handicap as it is defined by the relevant statute.

Given the restrictive statutory definition of handicapped contained in R.C. 4112.01(A)(13), there may be a number of valid physical requirements which job applicants must meet, in situations in which a failure to meet such requirements could be based upon physical conditions that do not constitute a handicap. Minimum visual acuity requirements and minimum height standards are examples of such requirements. For the foregoing reasons, the trial court did not err in finding that the police applicants were not qualified handicapped individuals under R.C. 4112.01(A)(13), and the second assignment of error is overruled.

The third and fourth assignments of error both concern the exception provided in R.C. 4112.02(L) to the statutory ban upon discrimination against handicapped individuals and are therefore considered together. R.C. 4112.02(L) provides that:

"Nothing in divisions (A) to (E) of this section shall be construed to require a handicapped person to be employed or trained under circumstances that would significantly increase the occupational hazards affecting either the handicapped person, other employees, the general public, or the facilities in which the work is to be performed, or to employ or train a handicapped person in a job that requires him routinely to undertake any task, the performance of which is substantially and inherently impaired by his handicap."

The commission challenges the finding of the trial court that the employment of appellees as police officers would present an occupational hazard, and that the city's uncorrected vision standard constitutes a bona fide occupational qualification for police officers. While these assignments of error, which relate to the city's evidentiary burden under the *McDonnell Douglas* analysis, may be moot in light of our determination that the trial court was correct in finding that the commission failed to establish a prima facie case that these police applicants were handicapped, we shall discuss these two assignments of error.

Appellee city, in its brief, discusses the two major legal theories regarding the proof required to establish a bona fide occupational qualification. The first theory, set forth in *Usery* v. *Tamiami Trail Tours, Inc.* (C.A. 5, 1976), 531 F.2d 224 and *Houghton* v. *McDonnell Douglas Corp.* (C.A. 8, 1977), 553·F.2d 561, requires that the employer demonstrate that the job qualifications in question are reasonably necessary, and also that the employer has reasonable cause to believe, based upon a factual reason, that all or substantially all of the protected class involved would be unable to perform safely and efficiently the duties of the job, or that some members of this class possess a trait precluding safe and efficient job performance. On the evi-

dence before the common pleas court, i.e., that police officers have had their glasses damaged and have had them knocked from their faces during physical confrontation with suspects, there is a factual basis for the city to believe that, at some time during the course of duties of virtually every police officer requiring corrective lenses, those officers would be unable to perform their duties safely and efficiently. The aforementioned evidence, and the findings of Dr. Sheedy that officers with visual acuity of less than 20/40 would be unable to distinguish the facial characteristics of persons at a distance of approximately twenty feet in situations involving the officers' need to use their weapons, also indicate that such a qualification of greater visual acuity would be reasonably necessary to ensure the safe firing of guns by officers, and thus necessary to the safety of the officers as well as of the general public.

The second theory regarding bona fide occupational qualifications was advanced in *Hodgson* v. *Greyhound Lines, Inc.* (C.A. 7, 1974), 499 F.2d 859, and requires the employer to have a rational basis in fact to believe that the elimination of its allegedly discriminatory practice would increase the likelihood of risk to the public. For the reasons set forth above, it was apparent to the trial court that an elimination of the visual acuity requirement would indeed increase the likelihood of risk to the public from officers with firearms.

It is apparent, therefore, that the occupational hazards and bona fide occupational requirement exceptions set forth in R.C. 4112.02(L) apply to the visual acuity requirement of the city for its police officers. The commission's allegation that the evidence disregards the fact that a number of myopic individuals wear contact lenses rather than glasses poses a distinction without a difference. There is no evidence that all myopic persons can wear contact lenses and, even if they could, that such lenses are also often subject to displacement or other phenomena interfering with vision. For the reasons set forth above, the common pleas court did not err in finding that the employment of applicants with such limited vision would present an occupational hazard, nor in finding that the visual acuity requirement was a bona fide occupational qualification for applicants for the position of police officer. Therefore, the third and fourth assignments of error are not well-taken and are overruled.

The fifth assignment of error alleges that the trial court erred in finding that the commission had exceeded its authority under R.C. 4112.05(B) in ordering instatement and back pay for the claimants. In view of our disposition of the first four assignments of error, any error that may have been committed by the trial court is nonprejudicial as it is apparent that, if the commission erred in its finding that appellees were wrongfully excluded from employment, the commission had no authority to order instatement or back wages.

The fifth assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and VICTOR, JJ., concur.

VICTOR, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.