**ASPLUNDH TREE EXPERT COMPANY, Appellee,**

v.

**OHIO CIVIL RIGHTS COMMISSION, Appellant; Payton.**

[Cite as *Asplundh Tree Expert Co. v. Ohio Civil Rights Comm.* (1991), 68 Ohio App.3d 550.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–320.

Decided April 9, 1991.

*Vorys, Sater, Seymour & Pease* and *Andrew C. Smith,* for appellee Asplundh Tree Expert Co.

*Lee I. Fisher,* Attorney General, and *Larry Y. Chan,* for appellant Ohio Civil Rights Commission.

BOWMAN, Presiding Judge.

This is an appeal by appellant from a judgment of the Franklin County Court of Common Pleas reversing appellant's decision that appellee had discriminated against an employee on the basis of the employee's handicap. The trial court found that appellant had failed to establish a prima facie case of handicap discrimination.

Appellee, Asplundh Tree Expert Co. ("Asplundh"), is a multi-national company with offices in this state engaged in the business of tree trimming. Appellee employed Gary Wayne Payton in September 1977 as a tree trimmer, which position was classified as a Trimmer E. Over the ensuing two and one-half years, Payton held several positions with the company, ultimately holding the position of Trimmer A, the highest classification of tree trimmer. As a Trimmer A, Payton worked on a three-man crew which trimmed tree limbs and brush from electrical supply lines. Most of this trimming work was done from a lift bucket so that little tree climbing was involved. In performing his duties from the bucket, Payton was sometimes required to use a saw weighing in excess of thirty-five pounds in addition to tools weighing less.

Payton was injured in May 1980 when he was struck by an automobile during the course of his employment as he was removing brush from the road. As a result of the accident, Payton sustained two broken legs which required him to be off work for approximately eight months. When he was released for work in January 1981, Payton continued to perform his previous job duties with the medical restriction that he not climb trees. The foreman of Payton's crew accommodated this restriction by having himself or another crew member climb trees on the infrequent occasion that such climbing was required.

Because Payton continued to have problems with his left knee, he underwent additional surgery on that knee in 1982 and was again released to work on August 30, 1982, with the previous restriction against climbing and an additional restriction against lifting weight in excess of thirty-five pounds. Payton was able to perform the majority of his duties, the other crew members assisting him when lifting weights in excess of thirty-five pounds.

During the period 1982 through 1986, Payton's work crew received high ratings for its productivity. Payton's foreman considered the crew his best crew ever. Also, during this period, in November 1985, Payton assisted a co-worker in a race discrimination claim filed with respondent-appellant, Ohio Civil Rights Commission ("commission"). The substance of Payton's statement to the commission was that appellee had continued to employ Payton with his medical restriction while failing to accommodate a black co-worker who also was medically restricted.

When Payton experienced increased swelling and pain in his left knee in early 1986, he underwent additional surgery. Subsequent to the surgery, Payton's physician once again released him in May 1986 to return to work with the same medical restrictions against climbing and lifting weights over thirty-five pounds. Appellee, on May 12, 1986, informed Payton that, due to a change of policy, the company was unwilling to accommodate any medical

restriction and that Payton could not return to his former position until he was one hundred percent fully recovered.

Thereafter, on May 16, 1986, Payton filed a charge affidavit with the commission alleging unlawful discriminatory practices by appellee. Specifically, Payton alleged that appellee had discriminated against him in the terms and conditions of his employment on account of his handicap and that appellee had failed to reinstate him in retaliation for having participated in the prior race-discrimination investigation conducted by the commission.

The commission's efforts to eliminate the alleged discriminatory practices through conciliation were unsuccessful and a complaint was issued on March 4, 1987. The complaint alleged that appellee's failure to reinstate Payton was motivated in part by Payton's handicap and in retaliation for Payton's having participated in the commission investigation.

The matter was heard before a hearing officer of the commission in July 1987, who issued findings of fact, conclusions of law and recommendations in February 1988. The hearing officer concluded that the commission had established a prima facie case of handicap discrimination and that appellee had failed to prove its affirmative defense. More particularly, the hearing officer concluded that Payton, although handicapped, could safely and substantially perform the essential functions of his job. As support for this conclusion, the hearing officer pointed to the fact that Payton continued to perform his job duties following his July 1982 surgery until March 1986, although working under climbing and weight-lifting restrictions. During this time period, the hearing officer noted that there was no evidence that Payton experienced any problems in performing his job or that he had ever received any discipline regarding his job performance. This fact was underscored, in the hearing officer's opinion, by the testimony of Payton's foreman that Payton's crew was highly productive. The hearing officer also concluded that Payton could perform his job duties in a safe manner despite climbing and weight-lifting restrictions.

The hearing examiner did, however, conclude that the alleged retaliatory conduct engaged in by appellee was not proved by the commission.

Accordingly, the hearing examiner recommended that the commission order appellee to cease and desist from all discriminatory practices in contravention of R.C. Chapter 4112, that appellee recall Payton to his former position of employment, and that appellee pay Payton back wages for the period he was wrongfully excluded from his position.

Following the objections filed by appellee, the commission filed its own findings of fact, conclusions of law and order, which essentially reproduced the recommendation of its hearing examiner.

Appellee, on June 3, 1988, timely appealed the commission's findings and order to the Franklin County Court of Common Pleas pursuant to R.C. 4112.06. Upon consideration of the administrative record compiled before the commission, the common pleas court determined that the commission's finding that Payton could safely and substantially perform the essential functions of his job was not supported by reliable, probative and substantial evidence. Accordingly, the common pleas court, on February 15, 1990, reversed and vacated the May 1988 commission order and entered judgment on behalf of appellee.

The commission now appeals and sets forth the following assignments of error:

"1. The common pleas court, as a reviewing court, abused its discretion by reweighing the evidence and substituting its judgment for that of the Ohio Civil Rights Commission.

"2. The commission's order is supported by reliable, probative and substantial evidence.

"3. The commission established a prima facie case of handicap discrimination.

"4. The record contains ample proof that Payton is a qualified handicapped person who can safely perform the functions of the trimmer 'A' job."

■ Although the commission assigns four errors for our review, its arguments center upon one issue. Specifically, the commission contends that the common pleas court abused its discretion in reversing the commission's order since that order was supported by reliable, probative and substantial evidence in the record. It is the position of the commission that it adduced sufficient evidence to sustain its burden of establishing that Payton could safely and substantially perform the functions of a Trimmer A. As support for this position, the commission points to Payton's ability to perform the trimming and brush-clearing activities required of a Trimmer A for the four-year interval between his July 1982 surgery and his March 1986 surgery, the testimony of Payton's foreman regarding the productivity of Payton's crew, and the absence of any disciplinary action taken against Payton by appellee because of Payton's inability to perform his job.

Appellee, on appeal, concedes that the sole issue presented is whether Payton could safely and substantially perform the duties of his job. Specifically, appellee maintains that the commission failed to adduce sufficient evidence as to Payton's ability to safely or substantially perform his job duties.

As to the former, appellee contends that Payton's handicap posed an elevated risk of injury to either himself or his fellow employees as evidenced by Payton's history of medical treatment and surgeries. As support for this contention, appellee relies upon the decision rendered in *Mantolete v. Bolger* (C.A.9, 1985), 767 F.2d 1416. Appellee underscores its argument regarding Payton's ability to safely perform his job duties by the fact that Payton essentially admitted that he could not participate in rescuing a fellow worker who has been accidentally electrocuted while working from the bucket. As to Payton's ability to substantially perform his job duties, appellee relies upon Payton's testimony that he was able to perform only sixty percent of his job duties as a result of his handicap.

Since the parties' arguments focus on the requisite quantum of evidence necessary to establish a prima facie case of handicap discrimination, it is important to note the elements of a prima facie case for handicap discrimination:

"To prove a prima facie case of handicap discrimination the commission must show not only that the complainant was handicapped and that the action was taken by the employer, at least in part, because the complainant was handicapped, but, further, that the complainant, though handicapped, can safely and substantially perform the essential function of the job in question. Ohio Adm. Code 4112–5–02(J). * * *" *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333, 496 N.E.2d 478, 480.

The parties do not dispute that Payton is a person with a "handicap" as defined in R.C. 4112.01(A)(13) or that the action taken by appellee was motivated, at least in part, by Payton's handicap. Rather, the sole issue contested by the parties is Payton's ability to safely and substantially perform the essential function of his job as a Trimmer A.

In reviewing a decision of the commission pursuant to R.C. 4112.06, the common pleas court is required to give due deference to the commission's resolution of factual issues. *Plumbers & Steamfitters Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 200, 20 O.O.3d 200, 205, 421 N.E.2d 128, 133. Due deference, however, does not require the common pleas court to inevitably accept every factual determination made by the commission. *Id.* Rather, in reviewing the evidence on the record as a whole, the common pleas court may set aside the administrative order if " * * * there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body * * *." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1268. The role of this court in reviewing the judgment of the common pleas court, under R.C. 4112.06, is to determine whether the common pleas court abused its discretion. *Ohio State*

*Univ., College of Social & Behavioral Sciences v. Ohio Civil Rights Comm.* (Nov. 9, 1989), Franklin App. No. 88AP-1072, unreported, 1989 WL 135298, appeal dismissed as improvidently allowed in (1991), 57 Ohio St.3d 615, 567 N.E.2d 260. This court will affirm such judgment if there is a reasonable basis for the common pleas court decision. *Id.*

In this case, the common pleas court determined that the commission's order finding that Payton could substantially and safely perform the essential function of his job was not supported by reliable, probative and substantial evidence. Thus, this court's initial inquiry is whether the commission adduced the requisite quantum of evidence to support its prima facie case. *Columbus v. Ohio Civil Rights Comm.* (1985), 23 Ohio App.3d 178, 180, 23 OBR 421, 423-424, 492 N.E.2d 482, 484-485.

The commission determined that the essential function of a Trimmer A was to trim limbs and brush from electrical supply lines. Appellee did not dispute this finding before the common pleas court but, rather, argued that Payton was unable to perform this function due to the climbing and weight-lifting restrictions.

Despite this contention, the commission had before it evidence that tree climbing was an infrequent requirement in the performance of Payton's duties, ninety-nine percent of the trimming being done from the lift bucket. As to the weight-lifting restriction, although there was evidence that Payton was occasionally required to operate a saw which weighted thirty-five pounds, or required to move tree limbs weighing more than thirty-five pounds, there was also evidence before the commission indicating that most of Payton's work involved lifting objects weighing much less than thirty-five pounds.

Moreover, the record also reveals that Payton's work crew had one of the highest productivity records for any crew in the Akron area, and that Payton's foreman never required him to climb trees. Additionally, there is no evidence in the record that Payton was *ever* disciplined for failing to perform his job duties between 1982 and 1986, let alone as a result of his medical restrictions.

This evidence constitutes reliable, probative and substantial evidence in support of the commission's determination. Cf. *Kent State Univ. v. Ohio Civil Rights Comm.* (1989), 64 Ohio App.3d 427, 438, 581 N.E.2d 1135, 1142, and *Greater Cleveland Regional Transit Authority v. Ohio Civil Rights Comm.* (1989), 58 Ohio App.3d 20, 22-23, 567 N.E.2d 1325, 1327-1328.

Having determined that the commission adduced the requisite determination, our next inquiry is to determine whether there exists in the record legally significant reasons for discrediting the commission's reliance on this evidence. In support of this argument, appellee relies upon the Ninth Circuit's decision rendered in *Mantolete, supra.* We find such reliance misplaced.

*Mantolete* can be distinguished from this case on two bases. First, the Ninth Circuit emphasized that it was the employer's burden to establish that the employee's handicap cannot be reasonably accommodated without undue hardship. *Mantolete, supra,* 767 F.2d at 1423. This burden is met where the employer gathered *substantial* information regarding the applicant's work history and medical history, including an assessment by an expert as to the probability that the handicap poses a substantial risk of harm. *Id.* at 1422–1423.

Here, the question presented is not, as appellee suggests, whether Asplundh carried its burden of proof in demonstrating an affirmative defense, such as that contemplated by R.C. 4112.02(L). Rather, the sole issue is whether the commission established a prima facie case by adducing sufficient evidence that Payton could safely and substantially perform the essential function of his job.

To the extent that appellee suggests Payton's medical history or weight-lifting restriction undermined the reliability of the evidence which supported the commission's determination that Payton could safely perform his job, we disagree. Although the undisputed evidence indicates that Payton underwent two operations on his left knee during the four-year period in question, there is *no* evidence to suggest that these surgeries were in any way caused or aggravated by Payton's continued employment as a Trimmer A.

Rather, the deposition testimony of Payton's treating orthopedic surgeon indicates that the continued problems Payton experienced with his left knee were the result of the initial severe trauma he sustained when struck by the automobile. This doctor further opined that with the climbing and weight-lifting restrictions imposed upon Payton, there was no medical basis to support a finding that Payton's continued employment as a Trimmer A would significantly increase the likelihood of further injury. Indeed, the physician testified that he would not have given a medical release with restrictions had he not felt that Payton could safely perform his job duties. There is no evidence to suggest a contrary conclusion.

With respect to appellee's reliance upon Payton's inability, due to his weight-lifting restriction, to engage in the rescue of a fellow worker, this court notes that such argument is premised upon the occupational hazards provision of R.C. 4112.02(L). As such, that issue is in the nature of an affirmative defense and not properly part of the commission's burden to prove a prima facie case. Even assuming, however, that appellee's argument regarding Payton's inability to lift an injured fellow worker from a tree-trimming bucket suggests an inability to perform an essential function of his job, this court finds such argument tenuous at best.

Initially, this court observes that there is no evidence to support appellee's argument that rescuing a fellow worker from a trim-lift bucket is an *essential* function of a Trimmer A. The sole evidence relied upon by appellee in making this argument is the testimony of its division manager who testified that, in his twenty-three years with appellee, he knew of two occasions in which three employees had been electrocuted while working as a trimmer. Although the division manager indicated that trimming crews practiced tree rescue and trim-lift rescues once a month, Payton testified that his crew had practiced the rescue operation once in nine years.

Appellee counters this last factor by comparing the frequency a trimmer is required to perform rescue operations with the frequency a police officer is required to use a gun. Suggesting that frequency alone is not determinative of an essential job function, appellee maintains that the rescue function is essential to Payton's duties because of the gravity of the situation involved.

While this court agrees that frequency alone is not determinative of whether a particular job function is an essential function, such determination may not be based upon mere speculation either. More to the point, there is nothing in the record to explain why lifting an injured fellow worker from a lift bucket elevates this activity to an essential function. There is no evidence as to the steps involved in a rescue operation, why lifting the worker from a bucket is necessary to the rescue, or the resultant outcome if this step is not performed. Given the limited state of the record, this court is unable to ascertain why the rescue operation constitutes an essential function of a trimmer's duties.

Based on the foregoing, this court concludes that the common pleas court had no legally significant evidence before it to undermine the reliability or probative value of the evidence adduced by the commission in support of its determination. Thus, the common pleas court had no reasonable basis for reversing the commission's order and abused its discretion in so doing.

For the foregoing reasons, the commission's assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed. This case is remanded to that court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY, J., concurs.

JONES, J., dissents.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.

FRED E. JONES, J., of the Twelfth Appellate District, sitting by assignment.

JONES, Judge, dissenting.

I cannot concur in the majority's reversal of the court of common pleas and must respectfully dissent.

The record reveals that when Payton returned to work following his initial injury and each subsequent surgery, he was under medical restrictions which prevented him from climbing trees or lifting any weight in excess of thirty-five pounds. Consequently, Payton, by his own admission, could only perform approximately sixty percent of his job duties. The remaining forty percent of his duties were handled by Payton's foreman or the other members of Payton's crew.

Under R.C. 4112.06(E), the findings of the Ohio Civil Rights Commission ("commission") shall be conclusive on appeal to the common pleas court if supported by reliable, probative and substantial evidence. *Columbus v. Ohio Civil Rights Comm.* (1985), 23 Ohio App.3d 178, 180, 23 OBR 421, 423–424, 492 N.E.2d 482, 484–485. This determination is essentially a question of the presence or absence of a requisite quantum of evidence which, although primarily a legal question, involves consideration of the evidence and, to a limited extent, permits a substitution of judgment by the reviewing common pleas court. *Id.*, citing *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265.

Inasmuch as our function in the case at bar involves appellate review of the court of common pleas decision, our review is accordingly " * * * limited to determining whether the common pleas court abused its discretion in * * * [reversing] the commission's finding that unlawful discrimination occurred. * * * " *Cleveland Civil Serv. Comm. v. Ohio Civil Rights Comm.* (1991), 57 Ohio St.3d 62, 65, 565 N.E.2d 579, 582. The common pleas court must give due deference to the commission's resolution of evidentiary conflicts unless there is "a legally significant reason to reverse the commission's order." *Id.*

Appellee does not dispute Payton's status as a "handicapped person" within the meaning of R.C. Chapter 4112. Rather, it is appellee's contention that Payton is not a "qualified handicapped person," one who can *successfully* and *substantially* perform essential functions of the job in question. Ohio Adm. Code 4112–5–02(K). The common pleas court concluded that a prima facie case of handicapped discrimination had not been established because of the

absence of requisite proof that Payton was a qualified handicapped person who could safely perform the functions of the job in question.

The majority finds that a prima facie case was established since Payton could safely and substantially perform his job's essential functions. See *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478. The majority opinion notes that Payton was not required to climb trees and that this work involved lifting objects weighing thirty-five pounds or less, that his work crew had one of the highest productivity records in their area, and that Payton was never disciplined for failing to perform his job duties throughout the relevant time period. This is cited as reliable, probative and substantial evidence in support of the commission's determination of discrimination.

I would initially note that this analysis ignores the proper standard of review. Our function is not to ascertain whether reliable, probative and substantial evidence exists, but whether the common pleas court abused its discretion by reversing the commission in the absence of a legally significant reason to do so. *Cleveland Civil Serv. Comm., supra,* 57 Ohio St.3d at 65, 565 N.E.2d at 582. In addition, the fallacy of the majority's analysis lies in its assumption that Payton's limited duties, his crew's overall performance, and the lack of any disciplinary action against Payton constitute evidence that Payton can perform the essential functions of his job. It is equally conceivable that the only way Payton could perform the essential functions of his job was if he was helped by others. In such instance, the job is performed not by Payton, but by his co-workers.

Furthermore, the majority assumes that Payton's friendly foreman and helpful co-workers will always be available, not only to assume those essential functions of the job which Payton cannot perform himself, but to also successfully execute any necessary emergency rescue procedures.

I cannot agree that appellee's safety argument is "tenuous at best." Payton's job involved the trimming of tree limbs and brush from electrical lines and must necessarily present situations where the crew works in close proximity to uninsulated high tension electrical wires. Under such dangerous circumstances, the ability of each crew member to respond quickly and completely in the event of an emergency is of paramount importance. Anything less entails accommodation beyond the point where the safety of the handicapped person and others is seriously jeopardized. See *Ohio State Univ., College of Social & Behavioral Sciences v. Ohio Civil Rights Comm.* (Nov. 9, 1989), Franklin App. No. 88AP–1072, unreported, 1989 WL 135298, appeal dismissed as improvidently allowed in (1991), 57 Ohio St.3d 615, 567 N.E.2d 260.

While Payton may be capable of performing some functions of his job, his inability to respond in an emergency situation in an unrestricted fashion limits his capability to *safely* perform the job in question. Such constitutes a legally significant reason to reverse the commission's order. *Cleveland Civil Serv. Comm., supra.* I would find no abuse of discretion and affirm the court of common pleas. I, therefore, dissent.