**CITY OF COLUMBUS, Appellee,**

v.

**LIEBHART;**

**Ohio Civil Rights Commission, Appellant.**

[Cite as *Columbus v. Liebhart* (1993), 86 Ohio App.3d 469.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–849.

Decided Feb. 23, 1993.

*Ronald J. O'Brien,* City Attorney, and *Douglas K. Browell,* for appellee.

*Lee Fisher,* Attorney General, *Joseph D. Rubino* and *Denise M. Johnson,* Assistant Attorneys General, for appellant.

PETREE, Judge.

This is an administrative appeal from a judgment of the Franklin County Court of Common Pleas that reversed a decision of appellant, Ohio Civil Rights Commission, which found that appellee, city of Columbus, unlawfully discriminated against Timothy W. Liebhart on the basis of handicap in connection with his attempt to secure a position in the Columbus fire fighter training academy. The commission sets forth three assignments of error as follows:

1. "The common pleas court, as a reviewing court, abused its discretion by reweighing the evidence and substituting its judgment for that of the Ohio Civil Rights Commission."

2. "The common pleas court's decision should be reversed as a matter of law, because the court abused its discretion by applying the incorrect case law to the facts as found by the commission and adopted by the court."

3. "The commission established by reliable, probative and substantial evidence that the city violated R.C. 4112.02(A) by failing to permit Timothy Liebhart to attend its training academy."

Timothy Liebhart filed a complaint with the commission asserting that the city of Columbus discriminated against him on the basis of his speech handicap.

After investigation and attempts at conciliation, the commission issued a complaint against the city and an adjudication hearing was held before a commission hearing examiner. The hearing examiner issued a report, including findings of fact and conclusions law, which found that Liebhart was handicapped, but which further found that the city was justified in not selecting him as a fire fighter because his speech handicap rendered him unable to pass the required oral interview. The commission heard the matter on objections and rejected the hearing examiner's conclusion that the city's discrimination against Liebhart was justified. The commission therefore issued a cease and desist order and also ordered the city to place the complainant in the next available fire fighter training academy class. Pursuant to R.C. 4112.06, the city appealed this determination to the common pleas court, which reversed the commission's decision because the court felt that Liebhart's speech handicap rendered him unable to safely and substantially perform his duties without significant hazard to himself or others. The commission then appealed to this court under R.C. 4112.061.

The commission's assignments of error essentially argue that the trial court erred in reversing the decision of the commission when there was substantial, reliable and probative evidence to support that decision. In *Asplundh Tree Expert Co. v. Ohio Civil Rights Comm.* (1991), 68 Ohio App.3d 550, 555–556, 589 N.E.2d 102, 106, this court succinctly set forth the standards of review governing administrative appeals in civil rights cases. Judge Bowman wrote in the majority opinion that:

"In reviewing a decision of the commission pursuant to R.C. 4112.06, the common pleas court is required to give due deference to the commission's resolution of factual issues. * * * Due deference, however, does not require the common pleas court to inevitably accept every factual determination made by the commission. * * * Rather, in reviewing the evidence on the record as a whole, the common pleas court may set aside the administrative order if ' * * * there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body * * *.' * * * The role of this court in reviewing the judgment of the common pleas court, under R.C. 4112.06, is to determine whether the common pleas court abused its discretion. * * * This court will affirm such judgment if there is a reasonable basis for the common pleas court decision." (Citations omitted.)

To prove a prima facie case of handicap discrimination the commission must show (1) that the complainant was handicapped, (2) that the employer's action was taken at least in part because the complainant was handicapped, and (3) that even though the complainant was handicapped, the complainant could safely and substantially perform the essential functions of the job in question. Ohio Adm.Code 4112–5–02(K); *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio

St.3d 279, 281, 25 OBR 331, 333, 496 N.E.2d 478, 480; *Asplundh, supra,* 68 Ohio App.3d at 555; 589 N.E.2d at 105; *Kent State Univ. v. Ohio Civ. Rights Comm.* (1989), 64 Ohio App.3d 427, 435, 581 N.E.2d 1135, 1140. The initial burden to establish the elements of a prima facie case falls upon the commission. *Columbus v. Ohio Civil Rights Comm.* (1985), 23 Ohio App.3d 178, 180, 23 OBR 421, 423, 492 N.E.2d 482, 484. The burden then shifts to the employer to establish nondiscriminatory or legitimate reasons for its actions. *Id.* at 181, 23 OBR at 424, 492 N.E.2d at 485. For example, the employer has the burden to prove the occupational hazard defense contained in Ohio Adm.Code 4112–5–08(D)(3). See Ohio Adm.Code 4112–5–08(D)(1).

The evidence presented before the hearing examiner established the following facts. Timothy Liebhart served for ten years as a part-time auxiliary fire fighter with the Clinton Township Fire Department. During that time he fought about twenty to thirty fires and served without incident. In fact, his former supervisor and former co-workers characterized him as an "excellent" fire fighter. Indeed, he eventually became qualified to work on the emergency medical team and performed typical paramedic duties. When he left the department in 1988 he was second in command. In that capacity, he was the fire fighter in charge of the fire scene itself, overseeing and commanding all of the other fire fighters as they fought the fire.

Liebhart was an able fire fighter with the department despite the fact that he has suffered nearly all of his life from a speech impediment. Specifically, Liebhart has a markedly severe stuttering disorder which prevents him from communicating effectively. In fact, his stuttering is so severe that it often takes him twice as long to communicate as it would take an ordinary person.

Liebhart, who is thirty years old, has wanted to be a full-time fire fighter since high school and has taken extensive training to accomplish this goal in his life. He has successfully completed the state-mandated training courses for fire fighters and has been qualified in other areas as well.

Liebhart applied with the city of Columbus in 1987 and began the long and arduous application process to become a city fire fighter. He passed the written civil service examination, the physical agility test, the physical examination, and the background investigation. Consequently, he was placed on the eligible list for admission into the city's fire fighter training academy.

The last step in the city's process for selecting fire fighters are the so-called "oral boards." This consists of an oral interview before several experienced fire fighters who can observe the candidate, ask questions, and hear any additional information. Thus, the "oral board" is much like any other job interview except that it is conducted before several fire fighters at one time. The evaluation forms that the interviewers are required to fill out highlight the typical areas of inquiry.

These areas include general history, marital history, personal history, residential history, financial history, employment history, military history, education history, criminal/traffic history, miscellaneous communications and appearance. After each category there is a space for the interviewer to note the candidate's responses or interviewer's impressions. Further, after each category there is a space where the interviewer is to rate the candidate as either "acceptable," "unacceptable" or that the interviewer has "reservations." The last part of the form has a space for the interviewer's overall rating of the candidate. Again, the interviewer is to indicate that the candidate is acceptable or unacceptable, or that the interviewer has reservations. The candidate must receive an overall acceptable rating to qualify for selection as a fire fighter. If the candidate fails the interview, however, the candidate can obtain a further interview with the city safety director, who is the person with actual hiring authority. However, the safety director follows the decision of the interview board almost all of the time.

Liebhart had his oral interview on October 1, 1988. His stuttering became immediately apparent to his interviewers and was quite severe. It was so severe that the interview, which normally takes about fifteen minutes to complete, took a full forty-five minutes. Liebhart was unable to answer questions smoothly and stuttered on almost every other word.

Liebhart was rated acceptable in every single area on the interview forms by every interviewer, except in the "communications" category, in which he received unacceptable marks from them. Further, they each gave him an overall unacceptable rating because of his stuttering.

Thereafter, Liebhart had a further interview with the assistant safety director who was acting as interviewer in the place of the safety director. At the interview, Liebhart again stuttered badly. The assistant safety director likewise found him unacceptable because of his stuttering.

At the commission hearing to contest the city's actions, Liebhart presented several witnesses who testified on his behalf. Jay Arnholt, a fire fighter who worked with Liebhart in Clinton Township, testified that he fought fires with Liebhart and worked on the emergency squad with him as well. He said Liebhart's stuttering never posed a problem. He said he trusted Liebhart and put his own life in his hands.

Likewise, Dr. John Mason, a psychologist and former Clinton Township fire fighter, testified that Liebhart was "extremely competent." He said that around the engine house Liebhart had some problem with stuttering but when he had to fight a fire or go on an emergency squad run he communicated adequately. He said that he never encountered any problem with Liebhart's stuttering in either the simulated training fires in "fire school" or in any actual fire situations. Indeed, on one occasion at fire school the controlled fire "flashed over," or

exploded, creating an emergency. Liebhart was the first one to see the flash in the smoke-filled room and yelled "get out" to the other fire fighters.

Lieutenant J.R. Louks, Liebhart's supervisor in Clinton Township, picked Liebhart to serve under him as "lead" fire fighter when Louks was not present. Liebhart thus orchestrated the work of the other fire fighters at the scene of the fire, giving orders and talking over the radio. Louks recalled that when he was in a smoke-filled building with him, Liebhart communicated effectively. Further, he pointed out that, aside from being an excellent driver and pump operator, Liebhart had to communicate over the radio and walkie-talkie and also did so effectively. He said Liebhart's stuttering never posed a problem. In fact, he said that Liebhart taught new recruits how to use the pump and did not have any difficulties in doing so.

Cathy Chester, a speech pathologist, evaluated Liebhart's stuttering disorder. She testified that he had a "markedly severe stuttering problem," which consisted of blockages and repetitions. She said that one could assume that his disorder significantly affected his everyday living. She found that stress did not affect his stuttering.

She explained there was no concrete medical definition for stuttering and the cause of the disorder is unknown. She explained that the difficulty or struggle to speak that stutterers suffer from is very individualized. She further said that some people are able to "forget" that they stutter when they focus on something, like work, but then revert to stuttering in stressful social settings.

Liebhart testified in his own behalf. By request of the city, the letter "p" was noted in the transcript to indicate pauses where he could not immediately answer the questions posed by counsel. He stuttered on most of his answers.

He testified that he had stuttered since age eight and was diagnosed as having a stuttering disorder. It takes him twice as long to carry on a conversation and this affects his life in many ways. For instance, he said he did not go on to college because of his difficulty in speaking. He even shies away from trying to order food at restaurants.

Despite his difficulties speaking in many situations, he has never had any problem at work. He said that no one ever complained about a communication problem. He said that he had been in emergency situations before where he had to yell out and he did so without stuttering. He said that even on the radio it is easier for him to communicate. He said he does not know why that is true but in his effort to get the job done he tends to think less about his stuttering and the words come out more quickly. The harder he tries to speak clearly, the worse his problem gets.

The city presented several witnesses in an effort to establish that Liebhart's stuttering rendered him unqualified. Bruce Wolf, an eighteen-year veteran of the City of Columbus Fire Department, sat on the five-member oral interview board that interviewed Liebhart. He said it was a "tough interview" because Liebhart could not properly articulate his words. He said the interview took twice as long as usual. He marked Liebhart as unacceptable because he believed that in stressful, emergency situations, Liebhart's stuttering could delay his response and thereby possibly cause injury to himself or other fire fighters. He emphasized that at a fire scene, where visibility is poor, verbal communication is essential to stay out of danger. He admitted that neither he nor anyone else on the board was a speech therapist qualified to understand speech disorders.

Dr. S. David Kriska, personnel psychologist with the city civil service commission, said that he is responsible for structuring the selection and promotion tests and procedures for the city police and fire departments. In that capacity, he studies the work done in various positions and creates job analyses. He then creates tests that try to predict a candidate's competence in the various tasks necessary to perform the job under analysis. The city has also commissioned several outside studies to do this type of analysis as well. He said the studies concluded that verbal expression is the second most important cognitive ability that a fire fighter must have. He explained that at the fire scene it is "critical" that the fire fighter be able to effectively communicate.

He said the oral interview was established years ago to see how the candidate expressed himself or herself. He felt that this was a peculiar case and said it would not be cost-effective to expect to find a lot of stuttering problems in the general population.

H.J. Dutko, assistant chief of the fire department, echoed Dr. Kriska's assessment of the need for proper communication by a fire fighter. He emphasized that a fire in and of itself is not an emergency to a fire fighter, but part of his daily job. But he said emergencies do occur on the job when a second can make the difference between life and death. He said all fire fighters must meet the communication requirements because at any given time they may be called to a major fire. He added that there are some other areas apart from actual fire fighting where communication is important as well. For instance, fire fighters perform building inspections and speak before groups to foster public relations. He admitted that Clinton Township fire fighters often work side by side with Columbus fire fighters and that the training for both departments is very much the same.

Wendall Metz, the assistant safety director who interviewed Liebhart, said that because of the stuttering, Liebhart's interview took forty-five minutes instead of the usual fifteen minutes. He said he recommended that Liebhart not be hired

because of his stuttering. He said he did not want to expose the city to liability if something did happen because of Liebhart's stuttering.

Since the city has conceded that Liebhart was denied employment on the basis of his handicap, the only issues to be addressed here under the *Hazlett* test are whether Liebhart was handicapped and whether he was qualified to substantially perform the position without significant hazard to himself or others.

The definition of "handicap" is contained in R.C. 4112.01(A)(13), which reads:

" 'Handicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped."

In the present case, the trial court was correct in concluding that Liebhart's stuttering disorder constituted a handicap. Liebhart testified that he was diagnosed as having this disorder, which he had had since he was eight years of age. He testified that his stuttering made it twice as difficult to carry on a conversation and this significantly affected his life. Further, speech pathologist Cathy Chester testified that one could assume that such a severe speech impediment would significantly affect his life. One could expect that his speech disorder would create significant hardship and vulnerability in a variety of everyday settings. The city did not offer any affirmative evidence to the contrary. Hence, Liebhart was handicapped under R.C. 4112.01(A)(13).

The last issue under the *Hazlett* test is whether Liebhart was qualified to safely and substantially perform the essential functions of the job in question. There is no doubt that clear, concise, and timely communication in the context of fighting a fire is an essential function of the job in question. The city presented abundant evidence to establish the importance of effective communication in fighting fires. Verbal expression is the second most important cognitive ability that a fire fighter must have. While there was also testimony that a typical fire fighter performs other duties like inspections and public relations activities, there was no evidence that these activities were essentials of the job. Moreover, there was no evidence that they had to be performed without any stuttering.

The central dispute between the parties concerns whether Liebhart will be able to communicate quickly and effectively in a fire or emergency situation. The hearing examiner, who presided over the testimony, expressly found that Lieb-

hart's stuttering was less of a problem when he was performing his duties as a fire fighter with Clinton Township than it was when he engaged in everyday conversation. The hearing examiner expressly found that his "stuttering did not interfere with the performance of his job duties."

Nevertheless, the hearing examiner found Liebhart unqualified because he failed his oral interview. The hearing examiner simply treated the oral interview as an unassailable neutral test which the city had chosen to screen out candidates who could not communicate effectively. The hearing examiner felt that Liebhart could not contest his failure at the oral interview by evidence of his successful past job performance. In effect, the hearing examiner found the test to be conclusive.

The commission wholeheartedly disagreed, stating that the oral interview was an improper selection device because it was an "insurmountable barrier to a speech impaired individual's employment opportunities to becoming a firefighter." The commission concluded that the city could have used alternative, less onerous criteria to gauge Liebhart's abilities, like considering his past work history.

The trial court rejected the commission's reasoning. The court felt that while the commission had expertise in determining who was handicapped, the assistant safety director and the five experienced fire fighters who interviewed Liebhart observed him face to face and could better determine if his communication problem constituted a significant hazard in the fire fighting context.

█ We agree with the trial court that safety is a paramount concern here and that a handicapped person need not be hired if his employment would create a significant risk of harm. See *DiPompo v. West Point Military Academy* (S.D.N.Y. 1991), 770 F.Supp. 887, judgment affirmed, *DiPompo v. West Point Military Academy* (C.A.2, 1992), 960 F.2d 326 (dyslexic applicant for fire fighter position not qualified where he could not read language on explosive hazardous materials that were prevalent in the area). However, we must reject the trial court's attempt to discredit the commission's decision. Assuredly, whether analyzed as an element of being a qualified handicapped person who can "safely" perform the job or as an element of the occupational hazard defense, assessing the risks posed in a fire situation would naturally fall within the expertise of fire fighters. But the issue in this case is not whether stuttering would cause a danger in fighting a fire. It would. The issue is whether Liebhart's stuttering would cause such a problem. Liebhart presented substantial evidence that he does not stutter when fighting fires. Speech pathologist Cathy Chester provided expert evidence that this phenomenon occurs. His former co-workers also testified that he does not stutter in fire fighting situations. The hearing examiner, who was the only person to actually hear these witnesses and observe their credibility, could have found that these people were not being truthful but

the hearing examiner said nothing of the sort. On the contrary, his findings of fact support the conclusion that Liebhart does not stutter in fire situations.

The city did not present any expert evidence to contradict the expert testimony presented by the commission in the record. The only evidence it presented was the fact that Liebhart could not speak in a job interview—a totally different situation from that presented in a blazing building. The fire fighters and assistant safety director simply assumed that Liebhart's stuttering is caused by nervousness and would get worse in a stressful fire situation. In fact, Cathy Chester tested Liebhart and found that his speech did not get worse with stress. Not one of the individual fire fighters or the assistant safety director knew anything about speech disorders. Not one of them was qualified to gauge how bad or good this man's speech would be in a fire. They made their assessments of his abilities on the basis of assumptions about his handicap which had no basis in fact. This type of decisionmaking is exactly what the handicap discrimination law was designed to eliminate.

The testimony showed that Liebhart performed differently at work than when being questioned either in an interview or at a hearing. Though the city's oral interview was designed to gauge normal verbal expression, the city presented no evidence to validate this test as a measure of Liebhart's own abilities. See Ohio Adm.Code 4112–5–03; cf. *Colorado Civ. Rights Comm. v. N. Washington Fire Protection Dist.* (Colo.1989), 772 P.2d 70 (employer has burden to establish whether medical qualifying factors for entry level fire fighters were reasonably related to ability to do the job).

The trial court abused its discretion by according more weight to the testimony of the interviewing fire fighters and the assistant safety director and discrediting the evidence relied upon by the commission. There was no reasonable basis for doing so in this case. The commission's decision was supported by substantial, reliable, and probative evidence.

For the foregoing reasons, the commission's assignments of error are sustained. The judgment of the common pleas court is reversed and the cause remanded for further proceedings consistent with this opinion and in accordance with the law.

*Judgment reversed
and cause remanded.*

JOHN C. YOUNG and BOWMAN, JJ., concur.