SCOTT, Appellant,

v.

UNIVERSITY OF TOLEDO, Appellee.

[Cite as *Scott v. Univ. of Toledo* (2000), 137 Ohio App.3d 538.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–656.

Decided March 9, 2000.

*John B. Spitzer,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Stephanie Pestello–Sharf,* Assistant Attorney General, for appellee.

---

TYACK, Judge.

In July 1997, Christine Scott filed a complaint in the Court of Claims of Ohio, naming her previous employer, the University of Toledo, as the lone defendant. Scott alleged that the university violated her civil rights, unlawfully discriminating against her based upon her physical disability or handicap. The litigation was brought pursuant to both state civil rights law, R.C. Chapter 4112, and federal law, Section 12102 *et seq.,* Title 42, U.S.Code, commonly referred to as the Americans with Disabilities Act ("ADA"). For purposes of this case, the laws are substantively comparable. *Sadinsky v. EBCO Manufacturing Co.* (1999), 134 Ohio App.3d 54, 730 N.E.2d 395.

Scott's complaint alleged that the university unlawfully terminated her employment based upon her physical disability, a condition resulting from a work-related injury; specifically, she injured her arm while employed as a custodial worker, a position classified as "heavy duty." She further claimed that the university failed to comply with discrimination laws, which require certain employers to make "reasonable accommodations" for handicapped employees under certain circumstances. The accommodation to which she claimed entitlement was appointment to a "light duty" clerical position for which she was qualified, having passed the required civil service examination for that position. Scott's complaint essentially alleged that the university's failure to make a reasonable accommodation occurred when it failed to hire her to such a position and, instead, selected someone else for the job.

In February 1999, the parties submitted the case to the trial court based upon stipulations of fact. In May 1999, the court ultimately rendered a decision granting judgment for the university.

Scott has timely appealed, assigning four errors for our consideration:

"1. The Court of Claims erred in holding that plaintiff failed to state a prima facie case because she was no longer qualified for the custodial position which she held prior to her injury, with or without a reasonable accommodation.

"2. The Court of Claims erred in finding that plaintiff failed to state a prima facie case because she failed to propose the requested accommodation to defendant prior to being terminated.

"3. The Court of Claims erred in finding that it would impose an undue hardship upon defendant if it were required to grant an unpaid medical leave to plaintiff for a reasonable period such as six or twelve months until a job opening became available which plaintiff had the qualifications and physical ability to perform.

"4. The Court of Claims erred in finding that the action of defendant in terminating plaintiff was not in violation of the Ohio Civil Rights Act or the Americans with Disabilities Act."

We glean the underlying facts giving rise to this litigation from those stipulations submitted by the parties and expressly relied upon by the trial court in its decision:

"[Appellant] was employed by [the university] as a custodial worker from March 5, 1993, to March 11, 1996. [Appellant] formerly worked in a classified state position for which the terms and conditions of employment were provided under a collective bargaining agreement with the Communications Workers of America, AFL–CIO, Local 4530. Under the state classification, the position of custodial worker is classified as heavy-duty.

"On September 12, 1995, [appellant] was injured on the job when a plastic light diffuser fell from the ceiling, striking her right arm. On September 26, 1995, [appellant] was placed on workers' compensation leave. On October 23, 1995, [appellant] returned to work in a transitional work program with defendant until February 19, 1996, when she resumed working full-time, but was restricted to medium duty until March 7, 1996. The transitional work program was subject to termination upon the employee reaching maximum medical improvement or after a maximum of twelve weeks, whichever came first.

"On March 4, 1996, [appellant's] physician notified [the university] that [appellant] had reached maximum medical improvement and was permanently restricted to light duty work. With this restriction, [appellant] was not qualified to return to her job as a custodial worker because it required heavy-duty work. As of March 4, 1996, [appellant] was no longer qualified for her previous custodial position, with or without a reasonable accommodation. [Appellant's] last day of work was March 7, 1996, and she was removed from the payroll effective March 11, 1996.

"[Appellant] was not informed by [the university] of her termination in writing or otherwise, but was advised by her union representative on or about April 23, 1996, that she was no longer an employee with internal bidding rights.

"During [appellant's] enrollment in the transitional work program, she took two civil service examinations for the positions of Clerk II and Clerical Specialist. [Appellant] passed the Clerk II examination, but failed the Clerical Specialist examination.

"No Clerk II positions became available between the date [appellant] passed the Clerk II exam and the date she was removed from the payroll. The job duties of custodial worker and Clerk II are completely unrelated.

"[Appellant] applied for a Clerk II position on July 15, 1996, and another Clerk II position in October 1996. In August 1997, [appellant] applied and was interviewed for another Clerk II position. Although [appellant] was qualified for all three Clerk II positions, she was not selected for any of them.

"[Appellant] has been awarded workers' compensation benefits for the injury she sustained to her shoulder and for carpal tunnel syndrome in the right wrist. She presently receives workers' compensation benefits because of her September 12, 1995 injury.

"One full-time Clerk II position became available in the entire calendar year of 1995, which was advertised March 1, 1995. [Appellant] was not eligible for this position because she did not pass the civil service exam until November 29, 1995. [Appellant] was assisted by the Employee Benefits Coordinator in the Office of Personnel in identifying positions for which she might be qualified after her eligibility in the transitional work program had expired, up to and following the date of her termination.

"[The university] continued to provide [appellant] with certain employment benefits after her termination, including health insurance until October 1996, and a tuition fee waiver so that she could continue taking classes to improve her skills until March 1997."

Since appellant's assignments of error are interrelated, we address them jointly.

R.C. Chapter 4112 codifies Ohio's version of the ADA's civil rights laws. R.C. 4112.02 provides:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * handicap * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." See, generally, *Berge v. Columbus Community Cable Access* (1999), 136 Ohio App.3d 281, 736 N.E.2d 517.

In *Martinez v. Ohio Dept. of Adm. Serv.* (1997), 118 Ohio App.3d 687, 693, 693 N.E.2d 1152, 1155, this court set forth the elements, which must be established to prove a prima facie case of handicap discrimination:

"[I]t must be shown that the complaining party was handicapped; that action was taken by the employer, least in part, because the complaining party was handicapped; and that, even though the complaining party is handicapped, he can safely and substantially perform the essential functions *of the job in question* with *reasonable accommodation. Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, *Asplundh Tree Expert Co. v. Ohio Civil Rights Comm.* (1991), 68 Ohio App.3d 550, 589 N.E.2d 102." (Emphasis added.)

The first two elements are not at issue here. The trial court noted the parties' agreement that appellant's injury satisfied the handicap requirement. The court also observed that appellant proved that she was terminated, "at least in part, because of her inability to perform her custodial position as a result of her disability."

However, appellant takes issue with the remainder of the trial court's decision with respect to the third and final element comprising the prima facie case of handicap discrimination. In particular, the trial court held:

"[Appellant] bears the burden of showing that she can safely and substantially perform the essential functions of the job in question. This, she did not do. [Appellant's] injury resulted in [her] being permanently restricted to light duty work. Therefore, once [appellant] reached maximum medical improvement, she was not qualified for her former position as a custodial worker since it required heavy-duty work. Therefore, * * * [appellant] has failed to state a prima facie case of discrimination under the ADA, since [she] stipulates that after March 4, 1996, she was no longer qualified for the custodial position, with or without a reasonable accommodation.

"However, [appellant] argues that [the university] should have made a reasonable accommodation for her, namely, allowing her to stay on medical leave for six months to a year to wait for a Clerk II opening.

" 'Reasonable accommodation' is defined in *Martinez:*

"Ohio Adm.Code 4112–5–02(A) defines accommodation to mean 'a reasonable adjustment made to a job and/or the work environment that enables a qualified handicapped person to safely and substantially perform the duties of *that position.' Id.* at 694, 693 N.E.2d at 1156." (Emphasis added.)

Quoting this court's opinion in *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 333–334, 632 N.E.2d 605, 609–610, *Martinez*, sets forth numerous examples of "reasonable accommodations:"

"Reasonable accommodations include but are not limited to job restructuring, acquisition or modification of equipment or devices, realignment of duties, revision of job descriptions or modified and part-time work schedules.

"* * *

"Reasonable accommodation includes both reasonable modification of the duties of the existing position, *if feasible,* and transfer, reassignment, or hire into a vacant position the handicapped employee can perform both physically and by qualification. * * *" *Martinez* at 694, 693 N.E.2d at 1156. (Emphasis added.)

█ In contrast, accommodations for handicapped employees are *"unreasonable* only if they place an undue hardship on the employer," which hardship is the employer's burden of showing. (Emphasis added.) *Id.; Wooten.* See, also, *Greater Cleveland Regional Transit Auth. v. Ohio Civil Rights Comm.* (1989), 58 Ohio App.3d 20, 567 N.E.2d 1325; Ohio Adm.Code 4112–5–08–(E)(1) and (3).

Turning to the determination of whether discrimination has occurred, the first prong of the *Martinez* test set forth above, the Supreme Court of Ohio, in examining R.C. Chapter 4112, has adopted a model of proof formulated pursuant to federal case law interpreting Title VII of the Civil Rights Act of 1964. Applying *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, this court, in *Martinez* at 695–696, 693 N.E.2d at 1157, set forth the appropriate standards to be applied:

"That model of proof initially requires that the plaintiff prove a prima facie case of discrimination by a preponderance of the evidence. Once the plaintiff has met this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason to rebut the presumption of discrimination established by the plaintiff. If the defendant successfully articulates a legitimate, nondiscriminatory reason, the plaintiff is required to prove, by a preponderance of the evidence, that the employer's articulated reasons are a pretext for impermissible discrimination. See, also, *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207."

█ The Court of Claims correctly held that appellant failed to establish a prima facie case of handicap discrimination based upon failure to prove the crucial third prong of the test – that she could "safely and substantially perform the essential functions *of the job in question with reasonable accommodation." Martinez, supra* at 693, 693 N.E.2d at 1155.

█ No argument is advanced that appellant could perform the heavy-duty custodial job under any circumstances. The only issue is whether the university

acted unreasonably in not hiring appellant to a Clerk II position, the duties of which are wholly unrelated to her former custodial position.

Appellant's reliance upon *Wooten,* is misplaced. In *Wooten,* this court specifically addressed reassignment to another position as a reasonable accommodation, stating:

"That 'reasonable accommodation' includes reassignment to an *available related vacant position* is almost axiomatic. R.C. 4112.02 prohibits handicap discrimination not only with respect to discharge but also with respect to conditions of employment, tenure of employment, [and] hiring for a *vacant* position * * *. The purpose and intent of R.C. Chapter 4112 and other applicable laws prohibiting handicap discrimination *necessarily includes reassignment to a vacant, related position* * * * absent a showing of undue hardship to the employer." (Emphasis added.) *Id.* at 334, 632 N.E.2d at 610.

The critical distinction between the *Wooten* case and the one before us is that the employer in *Wooten* had a vacant position available. Here, there was no vacant position for which appellant was qualified at the time of her termination. A review of the facts to which appellant stipulated reveals that she became qualified and applied for the clerical position some four months *after* she was terminated.

The trial court did not err in determining that the law does not require the university to place appellant on an indefinite leave of absence during which a position for which she might be qualified might become available.

The assignments of error are overruled.

Having overruled the assignments of error, the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and DESHLER, J., concur.