[Cite as *La Riccia v. Ohio Civ. Rights Comm.*, 2023-Ohio-1816.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MARY LA RICCIA,                              :

     Plaintiff-Appellant,                   :

                                  No. 111976

     v.

OHIO CIVIL RIGHTS COMMISSION,     :
ET Al.,

     Defendants-Appellees.              :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 1, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-960591

---

## *Appearances:*

Mary La Riccia, *pro se.*

David Yost, Ohio Attorney General, Adrian C. Feiertag, Assistant Attorney General, and David A. Oppenheimer, Principal Assistant Attorney General, *for appellee* Ohio Civil Rights Commission.

Littler Mendelson P.C., Timothy S. Anderson, and Jennifer B. Orr, *for appellee* Cleveland Clinic Foundation.

MICHAEL JOHN RYAN, J.:

{¶ 1} Pro se plaintiff-appellant, Mary La Riccia[1] ("La Riccia") appeals the trial court's judgment affirming the decision of defendant-appellee Ohio Civil Rights Commission's ("OCRC" or "commission") finding of no probable cause that defendant-appellee Cleveland Clinic Foundation ("CCF") committed a violation of Ohio's civil rights laws. La Riccia claimed that CCF discriminated against her and failed to grant her a reasonable accommodation by terminating her physician-patient relationship with CCF employee Dr. Neil Cherian. After a thorough review of the facts and the law, we affirm the judgment of the trial court.

**Substantive and Procedural History**

{¶ 2} La Riccia began seeing Dr. Cherian, a CCF neurologist, in April 2020, for treatment of her neurological disorder, Mai de Debarquement Syndrome, which causes dizziness and balance disturbances. The record reflects that Dr. Cherian treated La Riccia on four occasions consisting of one virtual visit and three in-office visits between April 23 and August 26, 2020. Between July and October 2020, La Riccia sent approximately 140 messages to Dr. Cherian through CCF's online MyChart system, which is a secure, online health management application that allows patients to review their medical records, test results, prescriptions, and appointment history and exchange messages with their health care providers.

---

[1] La Riccia's name is also spelled as "Lariccia" or "LaRiccia" throughout the record and in some citations. For consistency, we will use the spelling "La Riccia" in this opinion.

{¶ 3} During La Riccia's course of treatment, Dr. Cherian realized that he could not effectively treat La Riccia's symptoms and recommended she establish care with a primary care provider, a psychologist, and a physical therapist. La Riccia refused to see other providers unless Dr. Cherian physically accompanied her to the appointments. La Riccia insisted that Dr. Cherian was the only provider that could treat her.

{¶ 4} In October 2020, a nurse notified Dr. Emad Estemalik, CCF's Section Head for Headache and Facial Pain at the Center for Neurological Restoration, about the MyChart messages. Dr. Estemalik reviewed the messages and concluded that they were "inappropriate, concerning, and crossed the professional boundary between physician and patient."

{¶ 5} On October 12, 2020, CCF terminated La Riccia's treating relationship with Dr. Cherian. Dr. Estemalik instructed La Riccia to immediately discontinue her contact with Dr. Cherian and advised her that he would assist with the transition of her care to another CCF provider. La Riccia was not deterred and continued to contact Dr. Cherian after obtaining his personal cell phone number. She also mailed at least one letter to his house.

{¶ 6} On March 19, 2021, La Riccia, proceeding pro se, filed a charge of discrimination against CCF with the OCRC alleging that CCF engaged in unlawful discriminatory practices. Specifically, La Riccia alleged that CCF discriminated against her based on her mental disability. La Riccia wanted Dr. Cherian restored as her treating physician.

{¶ 7} The commission conducted an eight-month investigation into La Riccia's claims. On November 18, 2021, the commission issued a Letter of Determination finding that there was no probable cause to believe CCF had committed an unlawful discriminatory practice under Ohio's civil rights laws. The commission stated that it "considered relevant documents and testimony" to make its findings of fact. The commission found that CCF did not deny La Riccia access due to her disability but that "CCF terminated the physician/patient relationship between La Riccia and Dr. Cherian due to La Riccia's inappropriate behavior." The commission noted that CCF submitted evidence showing it had discontinued treatment for other patients in the past based on inappropriate behavior and that CCF tried to assist La Riccia with finding another provider. The commission concluded that "CCF has no duty under R.C. Chapter 4112 to accommodate an individual whose access to its services has been lawfully restricted" and dismissed the complaint.

{¶ 8} La Riccia filed for reconsideration. On reconsideration, the commission upheld its original finding of no probable cause. The commission noted that La Riccia's requested accommodation of continuing treatment with Dr. Cherian was unreasonable, given that Dr. Cherian himself believed he could no longer help La Riccia, and given the inappropriate messages La Riccia sent him. The OCRC reiterated that CCF had offered to assist La Riccia to find another provider and did not deny La Riccia services.

{¶ 9} In March 2022, La Riccia and her husband, Travis Horn, petitioned the Cuyahoga County Common Pleas Court pursuant to R.C. 4112.06 for judicial review of the OCRC's finding of no probable cause. In April 2022, La Riccia filed an amended complaint removing Horn as a petitioner and joining CCF as a defendant.

{¶ 10} La Riccia filed numerous motions including motions for injunctive relief and summary judgment, attaching numerous exhibits. The trial court denied these motions and issued an order explaining that it was limiting its review to the commission's record and the parties' briefs on the merits and that it would not consider other motions or papers that were not properly before the court.

{¶ 11} On September 20, 2022, the trial court issued its judgment entry and opinion affirming the OCRC's finding of no probable cause and holding that the commission's decision was not "unlawful, irrational, arbitrary, or capricious." Specifically, the court found that the record demonstrated that the physician-patient relationship had "run its course" and was damaged beyond repair. The court noted that Dr. Cherian referred La Riccia to providers who could treat her when he determined that her symptoms were not within his area of expertise. The trial court reasoned that the clinical relationship was no longer viable considering the nature of La Riccia's communications with Dr. Cherian. The court emphasized that La Riccia never submitted any evidence that verified that her inappropriate conduct was the result of a disability and found that CCF did not deny La Riccia care; "they merely attempted to transition her to other providers who could provide more suitable treatment."

**Federal Case**

{¶ 12} La Riccia pursued other avenues of relief in addition to filing a complaint with the OCRC and a petition with the Cuyahoga County Common Pleas Court. La Riccia, and her spouse, Horn, filed suit against CCF and several of its employees ("CCF defendants") in federal court alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA"), among other claims. The district court dismissed their complaint pursuant to Civ.R. 16(b)(6) for failure to state a claim upon which relief could be granted. *Lariccia v. Cleveland Clinic Found.*, N.D.Ohio No. 1:21 CV 1291, 2021 U.S. Dist. LEXIS 198552 (Oct. 15, 2021).

{¶ 13} La Riccia and Horn appealed. The Sixth Circuit Court of Appeals affirmed the district court's judgment. *La Riccia v. Cleveland Clinic Found.*, 6th Cir. No. 21-3990, 2022 U.S. App. LEXIS 23809, 6 (Aug. 24, 2022). In so doing, the court determined that the district court did not err in dismissing La Riccia and Horn's complaint because each of their federal claims required that the CCF defendants discriminated against La Riccia on account of her disability. *Id.* at 4. The court found that La Riccia and Horn's own allegations showed that the CCF defendants ended La Riccia's treatment relationship with Dr. Cherian because of inappropriate MyChart messages. "That is neither discrimination on the basis of disability nor retaliation for requesting an accommodation." *Id.* The court noted that even if La Riccia's messages stemmed from a mental disability, "it does not follow that the defendants took their actions because of her disability." *Id.* at 5. "As the district court correctly put it, the defendants' actions regarding La Riccia's 'care would have

been handled the same way if she had no illness and was exchanging personal, non-medical messages with any physician through MyChart.'" *Id.*, quoting *Lariccia*, N.D.Ohio No. 1:21 CV 1291, 2021 U.S. Dist. LEXIS 198552, at *id.*

**Assignments of Error**

I. The trial court erred by allowing the Commission to exploit the provisions set forth in O.R.C. 4112.05 to submit an incomplete and clearly biased record.

II. The trial court erred by allowing the Commission to exploit the provisions set forth in O.R.C. 4112.06(B) by failing to submit "all evidence and proffered evidence" received during their preliminary investigation to the court, without explanation and based solely on their exploitation of O.R.C. 4112.05.

III. The trial court erred by finding the Commission's determination was not unlawful, irrational, arbitrary and capricious based on evidence that is not included in the Commission's submitted record, and by disregarding all of my arguments and evidence, even what is present in the Commission's submitted record.

IV. The trial court erred by misinterpreting the text of O.R.C. 4112.02(G) and allowing the legislative intent behind the enactment of the statute to be defeated by overly restrictive interpretation in direct contradiction of the Ohio Supreme Court.

V. The trial court erred by misinterpreting the provisions set forth in Title III of the ADA and misapplied the law by applying Title I standards and restrictions to a Title III claim.

**Law and Analysis**

**Failure to Follow Appellate Rules**

{¶ 14} App.R. 12 and 16 provide this court with the authority to disregard any assignment of error that does not conform to the applicable appellate rules. *Fleming v. Shelton*, 8th Dist. Cuyahoga No. 108660, 2020-Ohio-1387, ¶ 10, citing *In re R.L.H.*, 8th Dist. Cuyahoga No. 100327, 2014-Ohio-3411. La Riccia is

proceeding pro se, without the representation of a licensed attorney. However, "[u]nder Ohio law, pro se litigants are held to the same standard as all other litigants." *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 29, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). La Riccia's appellate brief fails to comply with a number of appellate rules. Cases, however, are best decided on their merits; therefore, we will address her assignments of error, combining them for review.

**The Commission**

{¶ 15} The OCRC was created under R.C. 4112.03 and operates pursuant to R.C. Chapter 4112, as supplemented by Ohio Administrative Code Chapter 4112. The commission is authorized to "[r]eceive, investigate, and pass upon written charges made under oath of unlawful discriminatory practices[.]" R.C. 4112.04(A)(6). As it applies to this case, R.C. 4112.02(G) provides:

> It shall be an unlawful discriminatory practice * * * [f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

{¶ 16} "Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice" under R.C. 4112.02(G). R.C. 4112.05(B)(1). "[T]he charge shall be in writing and under oath and shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed." *Id.*

{¶ 17} "Upon receiving a charge * * * the commission may initiate a preliminary investigation to determine whether it is probable that an unlawful discriminatory practice has been or is being engaged in." R.C. 4112.05(B)(2). A member or members of the commission staff conduct this informal procedure to examine the factual basis behind the charge and to obtain the information necessary for the commission to determine whether it is probable that the respondent has engaged in any unlawful discriminatory practices. *McCrea v. Ohio Civ. Rights Comm.*, 20 Ohio App.3d 314, 315-316, 486 N.E.2d 143 (9th Dist.1984); *see also* Ohio Adm.Code 4112-3-03(A) and (B).

> Although the commission investigates the charge, it does not seek to receive formal evidence. Unlike the procedure set forth for a post-complaint formal hearing, R.C. 4112.05 does not provide for the swearing of witnesses, the taking of testimony, or the keeping of a record during the preliminary investigation.

*McCrea* at *id.*; *see also Ramudit v. Fifth Third Bank*, 1st Dist. Hamilton No. C-030941, 2005-Ohio-374, ¶ 19. After its investigation is completed, the OCRC issues a decision stating whether it finds "probable cause" or "no probable cause." R.C. 4112.05(B)(4). When the OCRC makes a finding of "no probable cause," it notifies the complainant that it will not issue a complaint in the matter. R.C. 4112.05(B)(4). The decision whether to issue an administrative complaint is within the OCRC's discretion. *State ex rel. Westbrook v. Ohio Civ. Rights Comm.*, 17 Ohio St.3d 215, 216, 478 N.E.2d 799 (1985).

{¶ 18} When the OCRC decides not to pursue a claim beyond the investigation phase, the complainant is notified of the decision via a Letter of

Determination. The commission states its findings of fact in the letter and dismisses the complaint. R.C. 4112.05(H).

{¶ 19} A party may apply to the commission for reconsideration of its determination, which the commission has the discretion to accept or reject. Ohio Adm.Code 4112-3-04(A) and (B). If the commission accepts an application for reconsideration, it shall make a determination and notify all parties. Ohio Adm.Code 4112-3-04(B)(2).

**Judicial Review**

{¶ 20} The final orders of the commission are subject to judicial review upon the filing of a petition in the court of common pleas by the aggrieved party. R.C. 4112.06(A). The commission files its record, including all evidence and proffers of evidence, with the reviewing court. R.C. 4112.06(B). Judicial review of the commission's orders is based upon the commission's record and such additional evidence as the court allows. R.C. 4112.06(B) and (D).

{¶ 21} "The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole." R.C. 4112.06(E). That said, because the commission does not hold an evidentiary hearing when it makes a no probable cause finding, there is "no evidence to review on appeal, reliable, probative, substantial, or otherwise." *McCrea*, 20 Ohio App.3d at 317, 486 N.E.2d 143. "The applicable standard of review for a pre-complaint decision not to issue a complaint for lack of probable cause is whether the *decision* is

unlawful, irrational, and/or arbitrary and capricious." (Emphasis sic.) *Id.* at 318. Under this standard, the court's review consists of a "limited examination" of the OCRC's decision, which only reviews the "findings of fact" and attachments from the OCRC's determination, "rather than examining the full record of the investigation." *Kutz v. State Edn. Assn.*, 10th Dist. Franklin No. 94APE06-781, 1995 Ohio App. LEXIS 1015, 7 (Mar. 16, 1995).

{¶ 22} The reason for using the unlawful, irrational, arbitrary, and capricious standard in an appeal from a no probable cause finding rests on the fundamental differences between a pre-complaint and post-complaint proceeding when a charge of discrimination is brought. *Hous. Advocates, Inc. v. Am. Fire & Cas. Co.*, 8th Dist. Cuyahoga Nos. 86444 and 87305, 2006-Ohio-4880, ¶ 10, citing *McCrea*. Therefore, because this case stems from a pre-complaint proceeding, the product of the commission's investigation does not constitute evidence for the trial court's reevaluation. Rather, the trial court's review is confined to reviewing the commission's findings of fact to determine whether sufficient justification is given for not issuing a complaint. *Id.* at ¶ 11, citing *McCrea* at *id.*

{¶ 23} Courts reviewing a determination made pursuant to R.C. 4112.06, "must give due deference to the administrative resolution of evidentiary conflicts." *Ashiegbu v. Ohio Civ. Rights Comm.*, 10th Dist. Franklin No. 96APE01-4, 1996 Ohio App. LEXIS 2559, 10 (June 18, 1996) (citations omitted). The charging party must demonstrate that the OCRC's findings were unlawful or an abuse of discretion.

*Freeman v. Ohio Civ. Rights Comm.*, 8th Dist. Cuyahoga No. 98273, 2012-Ohio-4825, ¶ 17.

{¶ 24} Our review of a trial court's decision is even more circumscribed. Our review is limited to whether the trial court abused its discretion in upholding the commission's order. *Hous. Advocates, Inc.* at ¶ 19, citing *McCrea*. An "abuse of discretion" occurs where "a court exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 25} With these concepts in mind, we review La Riccia's assignments of error.

**La Riccia's Claims**

**Proceedings**

{¶ 26} La Riccia contends in her first, second, and third assignments of error that the commission submitted an incomplete record to the trial court and the commission and the trial court improperly disregarded her evidence. Specifically, she alleges the commission's record is incomplete and the commission disregarded evidence that was relevant to the investigation. She argues that the supplemental information she filed with the trial court constitutes evidence that the commission deliberately omitted from its record.

{¶ 27} As previously stated, the commission does not receive formal evidence in its preliminary investigation of a charge of discrimination. *McCrea*, 20 Ohio App.3d at 316, 486 N.E.2d 143. Unlike the procedure set forth for a post-

complaint formal hearing, R.C. 4112.05 does not provide for the swearing of witnesses, the taking of testimony, or the keeping of a record during the preliminary investigation. *Id.* Thus, the "record" that is available for review is limited when dealing with a preliminary investigation by the commission. *Wu v. Ohio Civ. Rights Comm.*, 11th Dist. Portage No. 2020-P-0065, 2021-Ohio-1541, ¶ 79, citing *Van Horn v. Ohio Civ. Rights Comm.*, 11th Dist. Trumbull No. 94-T-5117, 1996 Ohio App. LEXIS 415 (Feb. 9, 1996).

{¶ 28} In this case, the commission's investigatory notes along with the Letter of Determination, the reconsideration report, and attachments to the letter and report constituted the commission's record in this case. This is the sum of the information the commission received and considered from the parties pertaining to the applicable claims.

{¶ 29} La Riccia has not shown that the commission disregarded information she submitted. La Riccia attempted to supplement the record during her appeal to the trial court, but the commission maintains the record, which the trial court reviews to determine whether the commission's decision was supported by reliable, probative, and substantial evidence on the record. Although the trial court may consider other evidence to determine whether the commission's findings of fact are supported by reliable, probative, and substantial evidence on the record, the commission's record remains the same. La Riccia cannot change the information the commission considered during its investigation of her charge. A petitioner can only supplement the record if the commission held an evidentiary

hearing. *See* R.C. 4112.06(D) ("The court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the commission."); *Murray v. Ohio Civ. Rights Comm.*, 2d Dist. Montgomery No. 9389, 1986 Ohio App. LEXIS 5807, 14 (Mar. 3, 1986) (finding that R.C. 4112.06(D) does not apply when there is no evidentiary hearing).

{¶ 30} We note that La Riccia's supplements, including messages she claims were exchanged between her and Dr. Cherian, were never produced to the commission during its investigation. Thus, those documents were not in the commission's investigatory file and are not part of the record on appeal. For example, La Riccia's claims that she and Dr. Cherian exchanged over 500 MyChart messages during the time she was his patient, including numerous nonmedical messages he sent to her in which, La Riccia contends, he encouraged her to disclose private matters. CCF submitted copies of La Riccia's MyChart messages with Dr. Cherian during the relevant time period but redacted substantial portions of the communications due to what it stated were patient privacy laws. During its investigation, the commission sought a release from La Riccia so that it could obtain an unredacted copy of her MyChart record, but La Riccia refused. Thus, the commission only had the redacted version to consider.

{¶ 31} Pursuant to statute, the commission issued its findings of fact in a Letter of Determination, which supported its determination that no probable cause exists to support La Riccia's claim of discrimination. *See* R.C. 4112.05(H). It is these

findings of fact that the trial court considered, pursuant to its judicial-review function under R.C. 4112.06, when it reviewed the commission's decision.

{¶ 32} Accordingly, the first, second, and third assignments of error are overruled.

**Commission Decision**

{¶ 33} In her fourth and fifth assignments of error, La Riccia claims that the commission misinterpreted the ADA and R.C. 4112.02(G).

{¶ 34} The commission contends that it does not have jurisdiction to consider La Riccia's ADA claims because it is limited to enforcing only the provisions in R.C. Chapter 4112. La Riccia points to no authority that confers jurisdiction on the commission for federal claims. Additionally, La Riccia's ADA claims were dismissed in federal court. The district court found that her claims "lack an arguable basis in law," reasoning that the ADA requires

> as a central element of a cause of action that Plaintiffs plead facts suggesting the Defendants discriminated against LaRiccia on the basis of a disability. It is not enough to simply allege that LaRiccia has a medical condition. Plaintiffs have to allege facts that suggest that this medical condition meets the statutory definition of a disability, and that these Defendants made the decisions they made and took the courses of action that they took based solely on the fact that LaRiccia has Mal de Debarquement Syndrome. Plaintiffs' allegations establish none of those elements. To the contrary, they allege that the Defendants were motivated to transfer her care to another physician by the very personal and non-medical content of the messages LaRiccia exchanged with Cherian through MyChart. The decision to transfer her care would have been handled the same way if she had no illness and was exchanging personal, non-medical messages with any physician through MyChart. Plaintiffs do not allege any facts that suggest discrimination on the basis of a disability occurred here.

*Lariccia*, N.D.Ohio No. 1:21 CV 1291, 2021 U.S. Dist. LEXIS 198552, at 10-11.

{¶ 35} Regarding the commission's interpretation of R.C. 4112.02(G), a successful claim under R.C. 4112.02(G) requires proof that the plaintiff is disabled within the meaning of the law and that the defendant is a private entity that owns, leases, or operates a place of public accommodation; took an adverse action against the plaintiff that was based upon the plaintiff's disability; and failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. *Powell v. Bartlett Med. Clinic & Wellness Ctr.*, S.D.Ohio No. 2:20-cv-02118, 2021 U.S. Dist. LEXIS 12970, 19 (Jan. 25, 2021). In this case, the OCRC determined that La Riccia failed to meet this standard because CCF did not deny her access to a place of public accommodation or the services of said place based on her disability. CCF "terminated the physician/patient relationship * * * because of Charging Party's inappropriate behavior." Upon reconsideration, the OCRC confirmed that "the original investigation appropriately found that Respondent did not deny Charging Party public accommodation, access, or service because of disability."

{¶ 36} La Riccia argues that her behavior is a product of her mental disability; therefore, by law, she cannot be held responsible for her actions or held to the same standard as someone without a disability. She further argues that it is unlawful for CCF to deny her access to Dr. Cherian, based on her mental disability, because he is the only doctor in the area who can treat her Mai de Debarquement Syndrome. La Riccia did not submit evidence, such as medical records or a report

from a physician, verifying that she suffered from a mental disability or that her conduct was caused by a mental disability. Even if La Riccia was able to show her behavior was due to a mental disability, it does not follow that CCF terminated the physician-patient relationship because of her alleged mental disability.

{¶ 37} CCF's stated reasons for discontinuing La Riccia's treatment with Dr. Cherian were two-fold. Dr. Cherian initially began to treat La Riccia but she began to complain of symptoms that the doctor does not treat. He recommended that she establish care with a primary care physician and she insisted he serve as her primary care physician even though he is not a primary care physician. Dr. Cherian averred that he could do nothing further to help La Riccia's various ailments and recommended her to specific doctors but she refused to see them. Dr. Cherian determined there was nothing more he could do to help La Riccia and informed her of his decision on October 7, 2020. Dr. Estemalik, Dr. Cherian's supervisor, found that "Ms. La Riccia's condition had not improved through treatment with Dr. Cherian" and "Dr. Cherian did not believe there was anything more he could do to treat her."

{¶ 38} Second, CCF based its decision on La Riccia's inappropriate behavior. Dr. Estemalik averred that he was notified that La Riccia sent an "alarming number" of messages to Dr. Cherian using MyChart, many of which did not relate to her medical care and some of which were "unusual and disturbing." According to Dr. Estemalik, after he "reviewed the messages that Ms. La Riccia sent to Dr. Cherian, I concluded that the messages were inappropriate, concerning, and

crossed the line between physician and patient." He contacted La Riccia directly and "instructed her to immediately discontinue her contact with Dr. Cherian." CCF provided letters it had previously sent to other patients whose treatment had been discontinued due to inappropriate behavior to show that La Riccia was not being singled out or unfairly treated and was not the only patient with whom CCF had to terminate a physician-patient relationship.

{¶ 39} La Riccia argues that CCF failed to provide her access to a public accommodation by prohibiting her from seeing Dr. Cherian as her treating physician. CCF, however, never prohibited La Riccia access to the Cleveland Clinic campuses, buildings, or its providers, except for Dr. Cherian. After CCF terminated Dr. Cherian's treatment of La Riccia, CCF continued to offer services to La Riccia by offering her assistance in securing another CCF physician to treat her. Although CCF did not offer La Riccia the accommodation she requested, which was to remain under Dr. Cherian's care, La Riccia is not entitled to the accommodation of her choice. *Martinez v. Ohio Dept. of Adm. Servs.*, 118 Ohio App.3d 687, 695, 693 N.E.2d 1152 (10th Dist.1997); *Hankins v. Gap, Inc.*, 84 F.3d 797, 800-801 (6th Cir.1996). La Riccia's request to force Dr. Cherian to continue to treat her against his clinical findings and against the advice of his department head is not a reasonable accommodation under the circumstances of this case.

{¶ 40} Accordingly, the fourth and fifth assignments of error are overruled.

**Conclusion**

{¶ 41} The commission's findings of fact are supported by reliable, probative, and substantial evidence. The record demonstrates that CCF acted lawfully in referring La Riccia to providers who could assist her once it determined that Dr. Cherian could no longer treat La Riccia because her symptoms were not within his area of expertise and because of the inappropriate nature of her communications with the doctor. CCF did not deny Ms. La Riccia care; they attempted to transition her to other providers who could provide more suitable treatment.

{¶ 42} Considering the above, the trial court did not abuse its discretion in determining that the OCRC's finding of no probable cause is not unlawful, irrational, arbitrary, or capricious.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

ANITA LASTER MAYS, A.J., and
MARY EILEEN KILBANE, J., CONCUR